## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ROBERT WILLIAMS,** | ) | |
| **an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-773-G** |
| | ) | |
| **TOWN OF JONES CITY,** | ) | |
| **an Oklahoma municipality, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Plaintiff Robert Williams filed this lawsuit on May 16, 2022, in Oklahoma state court, alleging violations of his federal constitutional rights and of state law against Ray Poland, as Mayor of the Town of Jones, and against Chris Calvert, Frank Koehler, and Missy Wilkinson, as members of the Town of Jones Board of Trustees. *See* Compl. (Doc. No. 1-2).[1] The case was removed to this Court on August 31, 2022, pursuant to 28 U.S.C. §§ 1331 and 1441(a).

Now before the Court is a Motion to Dismiss filed by Defendants Poland, Calvert, Koehler, and Wilkinson (collectively, the "Board Defendants") (Doc. No. 5), as well as Plaintiff's Response (Doc. No. 12) and a Reply (Doc. No. 13).

---

[1] Plaintiff also brings state-law claims against a fourth defendant, Town of Jones City ("Town"). The Town has filed an Answer (Doc. No. 4).

I.      *Plaintiff's Allegations*

In his Complaint, Plaintiff alleges that the Board Defendants violated his rights in connection with his employment as the Chief of Police for the Town.

The Town is a municipal/political subdivision located in Oklahoma County and organized under the laws of the State of Oklahoma.  Compl. ¶ 5.  Plaintiff is "the former Town Chief of Police of the Town."  *Id.* ¶ 1.  Plaintiff alleges that the Town has been subject to financial mismanagement and lack of controls for years, making the Town susceptible to the misappropriation of Town funds by Town employees.  *See id.* ¶ 21.  These risks were identified in annual audits in 2019 and 2020, but the Town "persistently failed to change its practices or otherwise address" the problem.  *Id.* ¶¶ 22-34.

In response to the findings of the annual audits, the Town retained the same firm that had prepared those audits to perform a private audit investigating "defalcations and discrepancies."  *Id.* ¶¶ 35-36.  Plaintiff "regularly sought updates from the Town concerning the status the private auditor's work" and "advised the Town that as soon as the private auditor's findings were complete, his office could proceed with its own investigation into any possible criminal liability."  *Id.* ¶¶ 37-38.  Plaintiff "kept a watchful eye" on Town employees' assistance or "lack thereof" with the private audit and "advised the Mayor of the need to move quickly in completing the audit to ensure the Town's claims associated with any financial mismanagement would not be time-barred by the relevant statute(s) of limitations."  *Id.* ¶¶ 39, 41, 42-43.  Plaintiff assigned his Deputy Chief, Les Warren, as the Town's Police Department investigator on the matter.  *Id.* ¶ 38.

Plaintiff was advised that he "need not worry himself over the matter." *Id.* ¶ 40. Plaintiff was further advised not to speak on the matter publicly because it was confidential. *Id.* Plaintiff alleges "upon information and belief" that the taxpayer-funded private audit was never fully completed and that "Defendants possessed no interest in the private auditor actually completing its work." *Id.* ¶¶ 49-50.

In September 2020, Plaintiff directed Deputy Chief Warren to contact the Oklahoma State Bureau of Investigation ("OSBI") "to report the Town's concerns and otherwise obtain assistance" in reviewing the Town Court Clerk's work and assisting in the review that was supposed to be performed by the private auditor. *Id.* ¶¶ 44, 131. Deputy Chief Warren made the request for OSBI's assistance on or about September 23, 2020. *Id.* ¶ 45. OSBI promptly initiated the investigation and ratified the auditor's concerns and findings, advising Plaintiff "that the amount of the Town's financial discrepancies exceeded $300,000.00." *Id.* ¶ 46.

OSBI recommended that the Town request a formal audit and investigation from the State Auditor's Office. *Id.* ¶ 47. On January 5, 2021, the members of the Town's Board of Trustees voted to refer the matter to the State Auditor's Office for further investigation. *Id.* ¶ 48. The Town advised the State Auditor's Office of its request on February 26, 2021. *Id.* ¶ 52. On March 26, 2021, the Town filed the necessary paperwork for the State Auditor's Office to initiate its investigation. *Id.* ¶ 53. The paperwork contained errors, which the Town corrected on April 27, 2021; the State Auditor's Office then queued the Town's request. *Id.* ¶¶ 54-55. At the time Plaintiff initiated this lawsuit, the State Auditor's Office investigation had not yet concluded. *Id.* ¶ 56.

At some point Plaintiff discussed the details of the audit requests with a then-member of the Town Board of Trustees.  The Town's mayor[2] overheard the conversation and "later advised Plaintiff to cease further discussion concerning 'city affairs' with said board member."  *Id.* ¶ 57.

During the relevant time period, Plaintiff's daughter Sarah Boggs was the owner and editor of the Town's sole local news source: a private blog titled "The Jones Journal." *See id.* ¶¶ 13, 58-59.  On this blog, Ms. Boggs released articles and posts related to the audit findings, as well as an opinion criticizing efforts to raise additional Town revenues by increasing sales taxes.  *Id.* ¶ 59.  Ms. Boggs submitted Open Records Act requests to the Town seeking information pertinent to the Town's investigation of financial problems; she also sought comments from the Board Defendants and Town employees, including Plaintiff, regarding the issue.  *Id.* ¶ 60.

On the morning of May 21, 2021, Ms. Boggs emailed the Town and the Town Board Members requesting that they review the past audit reports and addressing requests for information she had submitted regarding a local investigation into the Town court records. *See id.* ¶ 61.  Her email stated: "There have been some serious mishandlings of the public funds, and I believe it is my responsibility to shine a light on these issues."  *Id.*

That same afternoon, the Town posted public notice of a special meeting to occur four days later, on May 25, 2021.  *Id.* ¶ 62.  Plaintiff was not specifically notified of the meeting and became aware of it on Monday, May 24, 2021.  *Id.* ¶ 66.  The only item on

---

[2] It is unclear if the "Mayor" identified in the factual allegations is the current Town mayor, Board Defendant Ray Poland.

the meeting's agenda was a discussion concerning Plaintiff's "employment, hiring, appointment, promotion, demotion, disciplining, or resignation." *Id.* ¶ 67.

On the afternoon of May 24, 2021, the Town's mayor met with Plaintiff and advised Plaintiff that the Town Board "sought to go 'in a different direction' with respect to the role of Police Chief." *Id.* ¶¶ 69-70. Plaintiff expressed to the mayor that a change of direction made no sense. *Id.* ¶ 71. The mayor "[p]ush[ed] back" and advised that the Town's attorney had prepared a letter of resignation for Plaintiff to execute. *Id.* ¶ 72. Plaintiff responded that he would not feel comfortable resigning and, offended at the suggestion, attempted to discuss the request with the mayor. *Id.* ¶¶ 72-73. The mayor refused to provide an explanation for the demand that Plaintiff resign, "instead repeating that the Town needed to make a change." *Id.* ¶ 74. Plaintiff advised that he wanted to speak with his wife before he would sign any resignation letter. *Id.* ¶ 76.

Plaintiff retained the services of an attorney to represent his interests at the special meeting. *Id.* ¶ 77. This meeting commenced on Tuesday, May 25, 2021, with the four Board Defendants immediately entering into a closed-door executive session. *Id.* ¶¶ 10, 14-15, 65.[3] After approximately two hours, the Town's attorney invited Plaintiff into the executive session alone, denying "admission and/or access" to Plaintiff's attorney. *Id.* ¶¶ 17, 77-78. Plaintiff then had approximately 30 minutes to respond to purported concerns regarding his employment as Police Chief. *Id.* ¶ 79.

---

[3] Another Board member—not a party herein—was absent from the meeting. Compl. ¶ 65.

At this meeting, the Board Defendants notified Plaintiff that he was being terminated "for cause." *Id.* ¶¶ 10, 14, 88.  The Board Defendants cited several reasons for Plaintiff's termination, including: improperly accepting donations from a local company to provide to members of the Town Police Department as Christmas gifts; a subordinate's purchase of tasers with credit rather than with available funds; and insubordination toward Defendant Wilkinson over an incident involving the appointment of a resource officer at the Town elementary school.  *Id.* ¶¶ 81-86.  Plaintiff alleges that the Board Defendants' express reasons were "contrived" and pretextual, claiming that Defendants instead terminated his employment as retaliation for Plaintiff's criticism of the Town's response to financial mismanagement and his efforts "to advance a formal inquiry into the suspicious disappearance of Town funds." *Id.* ¶¶ 11-12, 18, 84, 88.

Following Plaintiff's termination, the Town Board Members "publicly disparaged" Plaintiff by advising the community that the termination had been for cause and that the Town would be opening an investigation into the internal workings of the Town Police Department.  *Id.* ¶ 19.  This conduct irreparably damaged Plaintiff's ability to find and maintain gainful employment in law enforcement.  *Id.*  The Town also imposed "penal fees" upon any party seeking Open Records Act requests to pay the Town for a legal opinion and/or review by the Town's attorney concerning the documents sought in the request.  *Id.* ¶¶ 19, 63.

Plaintiff brings federal constitutional claims against the Board Defendants pursuant to 42 U.S.C. § 1983, as well as state-law claims for wrongful termination, intentional infliction of emotional distress, tortious interference with contract, defamation, violation

of due process, and conspiracy.  *See id.* ¶¶ 95-151.  Plaintiff seeks compensatory and punitive damages along with costs and fees.  *See id.* at pp. 28-29.

II.     *Standard of Review*

The Board Defendants seek dismissal of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III.     *Plaintiff's 42 U.S.C. § 1983 Claims*

Plaintiff contends that the Board Defendants' conduct violated his rights under the First Amendment[4] and the Fourteenth Amendment.[5]  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Here, the Board Defendants do not dispute that they were acting under color of state law in connection with Plaintiff's termination from his position as Chief of Police.  *See id.* at 50 ("[G]enerally, a public employee acts under color of state law . . . while exercising his responsibilities pursuant to state law."); Compl. ¶¶ 127, 135.  The Board Defendants' challenge is broadly aimed at whether Plaintiff can show that, in doing so, they "subject[ed]" Plaintiff, "or cause[d] [Plaintiff] to be subjected," "to a deprivation of . . . [his] lawful rights."  *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

A.  *The First Amendment Claim*

Plaintiff claims that his termination from employment as the police chief was an act of retaliation for Plaintiff's "engaging in protected speech addressing a matter of public concern," in violation of the First Amendment.  Compl. ¶¶ 129-136.  The Board Defendants

---

[4] The First Amendment is made applicable to states by the Fourteenth Amendment.  *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 138 S. Ct. 2448, 2463 (2018).

[5] Plaintiff's Complaint also cites the Fifth Amendment in connection with his due process claim.  As no federal officials were involved, however, his due process challenge implicates rights guaranteed by the Fourteenth Amendment.  *See Parnisi v. Colo. State Hosp.*, No. 92-1368, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993).

argue that Plaintiff fails to state a viable claim for violation of his First Amendment rights based on the Board Defendants' alleged conduct.  *See* Bd. Defs.' Mot. at 11-13.

The First Amendment "forbids abridgment of the freedom of speech." *Janus*, 138 S. Ct. at 2463.  A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Mvers*, 461 U.S. 138, 140 (1983).  "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).  Stated differently, "[t]he First Amendment protects a government employee's speech (1) made as a citizen (2) on a matter of public concern (3) if the employee's right to speak outweighs the government's interest as an employer in an efficient workplace." *Butler v. Bd of Cnty. Comm'rs for San Miguel Cnty.*, 920 F.3d 651, 653 (10th Cir. 2019).

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee free speech cases.  *Leverington*, 643 F.3d at 724 (explaining that "after *Garcetti*, it is apparent that the *Pickering* analysis of freedom of speech retaliation claims is a five step inquiry" that will be referred to as "the

9

*Garcetti/Pickering* analysis" (internal quotation marks omitted)).  The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Id.* (internal quotation marks omitted).  "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

The Board Defendants contend that Plaintiff's relevant speech regarding the Town's finances was made not "as a citizen" but as "part of what [Plaintiff] [was] paid to do" pursuant to his official duties as Chief of Police, such that First Amendment protection does not apply.  *Janus*, 138 S. Ct. at 2471; *see Hesse v. Town of Jackson*, 541 F.3d 1240, 1249 (10th Cir. 2008) ("If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." (internal quotation marks omitted)).

The Tenth Circuit takes a "broad view" of what constitutes speech that is pursuant to an employee's official duties, and speech may be so categorized "even if it deals with activities that the employee is not expressly required to perform."  *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008) (internal quotation marks omitted).  Courts examine the instances of speech on a case-by-case basis, "looking both to the

content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (noting that courts focus on whether the speech stemmed from and was of the type of work the employee was paid to do). "[T]he ultimate question . . . is whether the employee speaks as a citizen or instead as a government employee." *Id.* (internal quotation marks omitted).

Here, the relevant pleading avers that Plaintiff was improperly terminated due to his criticism of the Town's oversight and his "work to compel an audit related to the misappropriation of town funds." Compl. ¶¶ 11-12, 18. Specifically, Plaintiff: (i) actively sought to observe and "speed up" the private audit and requested updates from the Town on its status; (ii) directed Deputy Chief Warren to refer to OSBI "an investigation" regarding auditing matters and discrepancies in the Town's financial records and to obtain assistance from that agency's investigators. *See id.* ¶¶ 13, 37-39, 41-42, 44-45, 51, 58, 131.

The context of these allegations clearly demonstrates that Plaintiff's actions were taken in his capacity as Chief of Police, rather than as the exercise of options available to a mere concerned citizen. *See, e.g.*, *id.* ¶¶ 38 ("Plaintiff advised the Town that as soon as the private auditor's findings were complete, his office could proceed with its own investigation into any possible criminal liability."), ¶¶ 38, 44-45, 51, 58, 131 (Plaintiff assigned the Deputy Chief to be the "lead investigator" for the Town Police Department on the Town's financial mismanagement and then directed the deputy chief to refer the matter to OSBI), ¶ 39 (Plaintiff advised the Town mayor that the private audit needed to be concluded quickly to ensure that any claims of the Town regarding financial

mismanagement "would not be time-barred by the relevant statute(s) of limitations"); *see also* Pl.'s Resp. at 13 (Plaintiff conceding that he pursued these issues partly as an "employee of the Town"). "[A] government employee's speech is not protected when there is no relevant analogue to speech by citizens who are not government employees." *Rohrbough*, 596 F.3d at 746 (internal quotation marks omitted). Although the pleading includes some references to a conversation with a former Board of Trustees member and Plaintiff's "speaking out" regarding the Town' finances, these vague allegations do not plausibly describe any speech or communications that were the basis for an adverse employment action by the Board Defendants. *See* Compl. ¶¶ 57, 131-132. And, to any extent Ms. Boggs' activities contributed to the decision to terminate Plaintiff, the Court cannot reasonably infer that such personnel action infringed upon *Plaintiff's* First Amendment right to engage in protected speech.

The Court must take a "practical and holistic view" of the relationship between Plaintiff's employment and the speech at issue. *Bailey v. Indep. Sch. Dist. No. 69 of Can. Cnty.*, 896 F.3d 1176, 1182 (10th Cir. 2018). Even viewing the pleading's allegations in the light most favorable to Plaintiff, his cited communications are easily categorized as speech "made pursuant to official duties" because they are "generally consistent with," "stemmed from," and are "of the type of activities [Plaintiff] was paid to do." *Id.* (internal quotation marks omitted); *Rohrbough*, 596 F.3d at 746-47 (alteration and internal quotation marks omitted). Plaintiff therefore cannot plausibly show any First Amendment violation in this regard, and this claim shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

B.  *Plaintiff's Federal Due Process Claim*

Plaintiff next claims that his termination from the position of Police Chief violated his right to procedural due process as guaranteed by the Fourteenth Amendment.  *See* Compl. ¶¶ 120-128.

The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  "[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision[.]" *Archuleta v. Colo. Dep't of Insts.*, 936 F.2d 483, 490 (10th Cir. 1991).  A plaintiff presenting a procedural due process claim must allege two elements: (1) the plaintiff had "a liberty or property interest which has been interfered with by the State"; and (2) "the procedures attendant upon that deprivation were constitutionally [in]sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

Therefore, "[t]o properly allege a violation of his procedural due process rights," Plaintiff "must first demonstrate that he had a protected property or liberty interest in his status" as Chief of Police.  *Hennigh*, 155 F.3d at 1253.  Plaintiff asserts that he held a protected property interest "in his continued gainful employment as Chief of Police for the Town."  Compl. ¶ 122. The Board Defendants disagree, arguing that Plaintiff has not plausibly shown that he had the requisite interest in his employment to be subject to due process protection.  *See* Bd. Defs.' Mot. at 13-16.

For purposes of procedural due process,

> [a]n individual has "a property interest in a benefit" . . . only if he has a "legitimate claim of entitlement" to the benefit, as opposed to a mere "abstract need or desire" or "unilateral expectation." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Such an interest does not arise from the Due Process Clause of the Constitution. Instead, it is created by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure a certain benefit and that support claims of entitlement to that benefit." *Id.* Thus, a property interest may be created by "statutes, ordinances, contracts, implied contracts, as well as rules and policies developed by governmental officials." *Simmons v. Uintah Health Care Special Service Dist.*, 364 Fed. Appx. 507, 515 (10th Cir. 2010) (citing *Calhoun v. Gaines*, 982 F.2d 1470 (10th Cir. 1992)).

*Snyder v. Bd. of Regents for Agri. & Mech. Colls. ex rel. Okla. State Univ. Ctr. for Health Scis.*, No. CIV-16-384-F, 2020 WL 827412, at *29 (W.D. Okla. Feb. 19, 2020) (alterations omitted).

As to the specific question of whether a public employee has a protected interest in his or employment, "[t]he standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment." *Hennigh*, 155 F.3d at 1253. "For example, an employee may possess a property interest in public employment if she has tenure, a contract for a fixed term," or "an implied promise of continued employment." *Darr v. Town of Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007). An employee also may hold a protected property interest if statutes or regulations place "substantive restrictions" on the government's ability to make personnel decisions concerning the employee. *Hennigh*, 155 F.3d at 1253. For example, an employee may possess a property interest if the law "allows dismissal only for cause or its equivalent." *Darr*, 495 F.3d at 1251; *accord Campbell v. Mercer*, 926 F.2d 990, 993 (10th Cir. 1991)

("[I]f a statute, regulation, or policy . . . restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such . . . causes are shown." (internal quotation marks omitted)).

In support of the proposition that he held a protected property interest in his employment, Plaintiff broadly cites "Town Ordinances," arguing that these laws establish that the Police Chief is subject to termination only for good cause. Compl. ¶ 125; *see* Pl.'s Resp. at 18-19 (citing Jones Mun. Code §§ 1-9I-3(A)(1)-(22), 1-9I-4, 1-9I-5).[6] But, as persuasively explained by Defendants, the provisions of the Town of Jones City's Municipal Code most reasonably support the conclusion that Plaintiff's employment was terminable at the will of the Town Board of Trustees. *See* Bd. Defs.' Mot. at 15-16; Bd. Defs.' Reply at 2-3.

For example, section 6-1-1 prescribes that the Town Chief of Police is "appointed by the town board of trustees for an indefinite term" and is "removable by the board of trustees." Jones Mun. Code § 6-1-1. The Code further directs that the Town Board of Trustees may "remove" such appointed employees "at pleasure." *Id.* § 1-7-1. This Court has previously held that such an "at pleasure" provision "create[d] only an employment at will relationship between the [town's] police chief and the Board." *Armstrong v. City of Arnett*, 708 F. Supp. 320, 327-28 (W.D. Okla. 1989) (rejecting a terminated police chief's

---

[6] The relevant ordinances were submitted as exhibits to the Board Defendants' Motion and also are publicly available at https://jones.municipalcodeonline.com/. On a Rule 12(b)(6) motion, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted).

procedural due process claim because he could not show a property interest in continued employment under Oklahoma law). Such "[a]t-will employees lack a property interest in continued employment." *Darr*, 495 F.3d at 1252; *see also Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1461 (10th Cir. 1997) (explaining that under Oklahoma law an employer may terminate an at-will employee "at any time for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong" (internal quotation marks omitted)).

Plaintiff also relies upon section 1-9I-3(A) of the Jones Municipal Code, which prescribes that after the first six months of employment have passed, "an employee may be dismissed for the good of the service." Jones Mun. Code § 1-9I-3(A). Even assuming that the "for the good of the service" standard applies to the termination of the Town Police Chief, it is well established that this language "does not create a protected property interest in employment" under Oklahoma law. *Fincel v. Town of Big Cabin*, No. 09-CV-0485, 2010 WL 1416728, at *4 (N.D. Okla. Apr. 5, 2010) (citing *Campbell*, 926 F.2d at 993; *Hall v. O'Keefe*, 617 P.2d 196, 200 (Okla. 1980)); *accord Youngwolf v. Town of Stratford*, No. CIV-12-1239-C, 2013 WL 775355, at *1 (W.D. Okla. Feb. 28, 2013).

Finally, Plaintiff cites the dismissal procedure afforded to a Town employee by the Jones Municipal Code as the source of his property interest. *See* Pl.'s Resp. at 19 (citing Jones Mun. Code § 1-9I-4). The relevant provision expressly disclaims that its use creates a property interest where such an interest does not otherwise exist, however. *See* Jones Mun. Code § 1-9I-4(G) ("The use of the [dismissal] procedure for a terminable at will employee does not confer a property interest."). Moreover, "an entitlement to nothing but

16

procedure cannot be the basis for a property interest." *Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) (internal quotation marks omitted). "'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541(1985).

It follows that Plaintiff has not plausibly alleged that he possessed a property interest in his position as Police Chief that was subject to procedural due process protection under the Fourteenth Amendment. This claim must be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).[7]

### IV.    *Plaintiff's State-Law Claims*

Upon removal, invocation of the Court's subject-matter jurisdiction in this matter was premised upon the federal questions presented by Plaintiff's 42 U.S.C. § 1983 claims. *See* Notice of Removal (Doc. No. 1) at 2; 28 U.S.C. §§ 1331, 1441(a). Those claims are now subject to dismissal, and Plaintiff's remaining claims against both the Town and the Board Defendants are premised upon violations of Oklahoma law. *See* Compl. ¶¶ 91-119, 137-151. The pleading reflects that the parties are not diverse, and the record does not evince any other basis for this Court's exercise of jurisdiction over this matter. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City*

---

[7] Because Plaintiff has failed to allege that the Board Defendants violated a federal constitutional right, the Court need not determine whether they would be entitled to dismissal based on qualified immunity or consider the Board Defendants' alternative arguments for dismissal of Plaintiff's § 1983 claims.

*Comm'n*, 149 F.3d 1151, 1156 (citing 28 U.S.C. § 1367(c)(3)).  Accordingly, the Court declines to proceed with the remaining state-law claims.

## CONCLUSION

As outlined herein, the Board Defendants' Motion to Dismiss (Doc. No. 5) is GRANTED.   Plaintiff's Complaint (Doc. No. 1-2) is DISMISSED WITHOUT PREJUDICE.  Specifically, Plaintiff's federal claims are dismissed for failure to state a claim upon which relief can be granted.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

A separate judgment shall be entered.

IT IS SO ORDERED this 29th day of September, 2023.

CHARLES B. GOODWIN
United States District Judge